IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PATRICIA A. ASHLEY                                                    PLAINTIFF

v.                              Case No. 4:21-cv-1179-KGB

CITY OF BENTON, ARKANSAS, *et al.*                          DEFENDANTS

## ORDER

Before the Court is the motion to dismiss filed by defendants City of Benton, Arkansas; City of Benton City Council; and the City of Benton's Chief of Police (Dkt. No. 12).  Also before the Court is a request by Ms. Ashley to amend her complaint to add the First Amendment (Dkt. No. 23).  The Court grants, in part, and denies, in part defendants' motion to dismiss (Dkt. No. 12).  The Court denies Ms. Ashely's motion to amend her complaint to add First Amendment (Dkt. No. 23).  The Court denies as moot Ms. Ashley's remaining pending motions (Dkt. Nos. 17; 24; 26–27).  In reaching these decisions, the Court has reviewed and considered Ms. Ashely's most recent status report (Dkt. No. 30).

I.       **Background**

A.       **Ms. Ashley's Complaint And Defendants' Motion To Dismiss**

The following facts are taken from Ms. Ashley's complaint (Dkt. No. 1).[1]  In making its determinations in this case, the Court has considered Ms. Ashley's complaint and her "[r]equest to the Court to amend pleading by adding First Amendment to it" (Dkt. No. 23).

---

[1] The Court references pages of Ms. Ashley's complaint in the order in which they appear on the electronic docket.  Page five begins with Ms. Ashely's statement of claim section and continues to page nine where she begins to detail the relief sought.  The last page, page 11, is the final page of the *pro se* civil complaint form.

The Court understands Ms. Ashley to allege in her *pro se* complaint claims under 42 U.S.C. § 1983 (Dkt. No. 1).  Ms. Ashley alleges that defendants violated her Equal Protection and Due Process rights under the Fourteenth Amendment to the United States Constitution (*Id.*, at 5, 9). Specifically, Ms. Ashley alleges that defendants violated her Fourteenth Amendment right to Equal Protection because she claims she was not safe and protected from fireworks, as compared to other residents in other areas of the City of Benton, on the dates of July 3, July 4, and July 5 of 2016, 2017, 2018, 2019, 2020, and 2021 (*Id.*, at 7–9).  She alleges that, because City of Benton Council members, and specifically those on the Public Health and Safety Committee, continued to authorize the use of fireworks on the dates of July 3, July 4, and July 5, she was left unprotected from the danger and harm of fireworks (*Id.*, at 7).  Moreover, she represents that she contacted multiple City of Benton Council members with her safety concerns, and she states that they did not act based on her concerns about the use of fireworks in the City of Benton during the July 4 holiday season (*Id.*, at 6–7).

Included in her allegations regarding fireworks, Ms. Ashley argues that City of Benton Council member Evelyn Reed is aware of the need for additional lighting on Ms. Ashley's street because the dark areas near Ms. Ashley's home provide an ideal launching zone for fireworks (*Id.*, at 6).  Ms. Ashley also states that City of Benton Council member Robin Freeman has never voted to disallow fireworks in Ms. Ashley's neighborhood, and City of Benton Council member Steve Lee endorses rather than condemns the use of fireworks in Benton (*Id.*).  Ms. Ashley's complaint also includes language accusing the Chief of Police of not enforcing the fireworks ordinance, while criticizing City of Benton Council member Bill Donner for continuing to vote to allow fireworks in Benton (*Id.,* at 7). Ms. Ashley also complains that the City of Benton exempts certain days from local noise ordinances (*Id.*).

Ms. Ashley next contends that defendants violated her Fourteenth Amendment rights when a group presented the City of Benton with a proposal to change the name of her street (*Id.*, at 9). Ms. Ashley alleges that her right to "history and heritage" under the Fourteenth Amendment will be violated if her street name is changed, though she does not state if that alleged right which she contends exists flows from the Due Process, Equal Protection, or some other actionable clause of the Fourteenth Amendment (*Id.*).

For relief, Ms. Ashley seeks $100,000 for the harm caused throughout the July 4 holiday season, during which the City of Benton permits firework detonation; permits depreciation of her real property resulting from the impact of fireworks; and is liable according to Ms. Ashley for compensatory damages for pain and suffering that she might endure if the City of Benton changes the street name of her current address (*Id.*, at 9–10).  The Court also understands Ms. Ashley to seek in her complaint an affirmative injunction requesting the Chief of Police to send his officers to Ms. Ashley's home at the height of fireworks season (*Id.*, at 10).

Defendants filed the instant motion to dismiss, arguing:  (1) that Ms. Ashley lacks standing to sue, (2) that she fails to state an Equal Protection Clause claim, and (3) that, even if she had standing and could state a claim, defendants are entitled to legislative or qualified immunity to the extent they are sued in their personal capacities (Dkt. No. 13 at 3–12).  Defendants also request that Ms. Ashley's complaint be dismissed with prejudice because this is the second lawsuit in which she seeks relief from this Court related to the fireworks and her street name (*Id.*, at 1).

### B.    Ms. Ashley's Motion To Amend

After defendants filed their motion to dismiss, Ms. Ashley filed a request to amend seeking to add the First Amendment to her complaint (Dkt. No. 23).  Ms. Ashley fails to attach to her motion her proposed amended complaint as required by Local Rule 5.5(e) of the *Local Rules of*

*the United States District Court for the Eastern and Western Districts of Arkansas* ("A party who moves to amend a pleading shall attach a copy of the amendment to the motion").  For this reason, and for additional reasons explained in this Order, the Court denies Ms. Ashley's request to amend her complaint to add the First Amendment (Dkt. No. 23).

###    C.    Parties To This Lawsuit

In the statement of claim section of her complaint, Ms. Ashley mentions that Benton's Mayor has also violated her Fourteenth Amendment Rights (Dkt. No. 1, at 5).  However, the Mayor is not listed in the "defendants" section of the *pro se* civil complaint form (*Id.*, at 2).  Defendants' motion to dismiss does not include the Mayor as a moving party (Dkt. No. 12).

Though a *pro se* plaintiff's complaint is to be construed liberally, Ms. Ashley must allege facts and a legal theory that are actionable.  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).  The Court will not construe the facts of Ms. Ashley's complaint to state a claim against Benton's Mayor, when the Mayor is not a named defendant.  *Id.* (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), for the proposition that courts "will not supply [*pro se* plaintiffs with] additional facts . . . [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  The Court dismisses without prejudice any claims Ms. Ashley intended to bring against the Mayor.

##    II.    Legal Standard

###    A.    Motion To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party. *See Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001).  However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement."  *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

A court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint.  *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006).

Finally, in evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, the court holds "a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers."  *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (alteration in original) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Even with this

construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### B. Constitutional Standing

The judicial power of Article III courts only extends to "Cases" and "Controversies." U.S. Const. art. III., § 2. Thus, "[c]onstitutional standing . . . is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims." *Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021) (quoting *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017)). Constitutional standing consists of three elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concreate and particularized and (b) "actual and imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff has the burden of establishing standing, and if he or she cannot, then his or her complaint must be dismissed for lack of subject matter jurisdiction. *Id.* at 561; *see also Agred Found.*, 3 F.4th at 1073. The injury in fact, causal connection, and likelihood of redressability elements "must be supported . . . with the same manner of degree and evidence required at each stage of litigation." *Lujan*, 504 U.S. at 561.

The injury in fact element requires the injury to the legally protected interest to be: "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotations omitted). The United States Supreme Court clarified in *Spokeo v. Robins*, 578 U.S. 330, 340 (2016), that the injury in fact element must be both concrete and particularized. A concrete injury must be real and exist, not exist in the abstract. *Id.* Furthermore, "[f]or an injury to be 'particularized,' it must actually affect the plaintiff in a personal or individual

6

way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).  An injury is actual and imminent when it is not speculative.  *See Lujan*, 504 U.S. at 564.

A plaintiff establishes the second element of standing, the causal connection, when "the asserted injury was the consequence of the defendants' actions."  *Warth v. Seldin*, 422 U.S. 490, 505 (1975).  That is to say the injury must be "fairly traceable to the challenged action of the defendant."  *Lujan*, 504 U.S. at 560; *see also Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) (explaining that "[t]o establish causation a plaintiff must show that its injury is 'fairly traceable' to a challenged statutory provision." (quoting *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004))).

Lastly, plaintiffs make out the third element of standing, redressability, when they demonstrate that a court can grant relief for the pleaded injury.  *Lujan*, 504 U.S. at 561; *Advantage Media, L.L.C.*, 456 F.3d at 801.  Specifically, the plaintiff must demonstrate more than just a "'merely speculative' showing that the court can grant relief to redress the plaintiff's injury." *Advantage Media, L.L.C.*, 456 F.3d at 801 (quoting *Planned Parenthood of Mid-Missouri & Eastern Kansas, Inc v. Ehlmann*, 137 F.3d 573, 576–77 (8th Cir. 1998)).

### C.   Equal Protection Clause

Section one of the Fourteenth Amendment prevents states from "mak[ing] or enforc[ing] any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV., § 1.  The Equal Protection Clause, therefore, requires that all similarly situated individuals be treated similarly.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Thus, to establish a claim under the Equal Protection Clause, a plaintiff must demonstrate that she has been treated by a state actor differently than others who are similarly situated.  *In re Kemp*, 894 F.3d 900, 909–10 (8th Cir. 2018).  This "threshold showing," is required

in order for a plaintiff to make out a viable claim under the Equal Protection Clause.  *Id.* at 909.

If a plaintiff can make this showing, courts evaluate the classification based on the appropriate

level of judicial scrutiny.  *Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 880 (8th Cir. 2021).

Classifications of individuals are presumed to be valid and are constitutional if the

classification is rationally related to a legitimate state interest.  *City of Cleburne*, 473 U.S. at 440.

If the classification, however, is based on race, alienage, national origin, or a fundamental personal

right, the classification must be narrowly tailored to serve a compelling governmental interest to

be deemed constitutional.  *Id.* at 440.  If the classification is based on gender, the classification

must be substantially related to an important governmental interest to be constitutional.  *Id.* at 441.

The United States Supreme Court has recognized that laws targeting one person may also

violate the Equal Protection Clause.  This "class of one discrimination [involves circumstances]

where the plaintiff alleges that [he or] she has been intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment."  *Mensie v. City

of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528

U.S. 562, 564 (2000)).

### D.      Due Process Clause

The Due Process Clause of the Fourteenth Amendment protects against governmental

deprivations of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV,

§ 1.  A procedural due process claim "focuses not on the merits of a deprivation, but on whether

the State circumscribed the deprivation with constitutionally adequate procedures."  *Parrish v.

Mallinger,* 133 F.3d 612, 615 (8th Cir. 1998).  A procedural Due Process claim requires the

plaintiff to challenge the manner of any deprivation, such as lack of notice or opportunity to be

heard.  *See Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006).  Substantive Due

Process stems from the liberty interest in the Due Process Clause and protects "against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 749 (8th Cir. 2007) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).  Although Ms. Ashley's complaint is not a model of clarity, to the extent Ms. Ashley intends to allege claims under the Due Process clause, the Court understands Ms. Ashley to allege substantive Due Process claims and will analyze her allegations accordingly.

To prove that the government violated an individual's substantive Due Process rights, the plaintiff must "show (1) a right under the Fourteenth Amendment; and (2) the defendant deprived that plaintiff of that right." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Ganley*, 491 F.3d at 749).  The first inquiry requires courts to consider whether the right arises under the Fourteenth Amendment.  *Creason*, 435 F.3d at 824.  For rights to arise under the Due Process Clause, the rights need to be "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997).  The second inquiry looks at whether the government deprived the individual of "that right within the meaning of the Due Process Clause."  *Creason*, 435 F.3d at 824 (alteration in original).  To show that the government deprived a plaintiff of Due Process of law, the plaintiff "must demonstrate that the government action complained of is truly irrational, that is something more than . . .  arbitrary, capricious, or in violation of state law." *Id.*

### E.   Municipal Liability

"[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan*

*Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  "[A] 'policy' is an official policy, a deliberate choice

of a guiding principle or procedure made by the municipal official who has final authority

regarding such matters."  *Corwin v. City of Independence.*, 829 F.3d 695, 700 (8th Cir. 2016)

(alterations in original) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).  A

plaintiff proves a custom by demonstrating:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional
> misconduct by the governmental entity's employees; (2) deliberate indifference to
> or tacit authorization of such conduct by the governmental entity's policymaking
> officials after notice to the officials of that misconduct; and (3) that plaintiff was
> injured by acts pursuant to the governmental entity's custom, i.e., that the custom
> was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir.

2014)).

### F.    Immunities From Suit Under § 1983

### 1.    Legislative Immunity

Legislative immunity from suit seeks to protect legislators from liability for exercising their

legislative discretion.  In *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), the United States Supreme

Court held that local legislators are "absolutely immune from suit under § 1983 for their legislative

activities."  Legislative immunity protects legislators in all activities that take place "in the sphere

of legitimate legislative activity."  *Id.* at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376

(1951)).  To determine whether an activity is a legislative activity, "the Supreme Court applies a

functional test."  *Leapheart v. Williamson*, 705 F.3d 310, 313 (8th Cir. 2013).  "Under this

functional test, '[w]hether an act is legislative turns on the nature of the act, rather than on the

motive or intent of the official performing.'"  *Id.*  (quoting *Bogan*, 523 U.S. at 55).  Action is

legislative if it "looks to the future and changes existing conditions by making a new rule to be

applied thereafter to all or some part of those subject to its power."  *Leapheart*, 705 F.3d at 313.

A legislator's potential or alleged motives are "wholly irrelevant to [the] determination of whether [a legislator is] entitled to legislative immunity." *Id.* (quoting *State Emps. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 90 (2d Cir. 2007)) (alterations in original).

## 2. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity extends to public employees when they are sued in their individual capacity.  *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).  "A suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  Therefore, "[q]ualified immunity is not a defense available to governmental entities[,]" and courts conduct the above-discussed law, custom, or policy analysis to determine liability.  *Johnson*, 172 F.3d at 535; *see also Brown*, 520 U.S. at 403.

## III. Discussion

### A. Standing To Bring Constitutional Claims

#### 1. Disparity In Protection:  Fireworks

Ms. Ashley alleges that defendants violated her right under the Fourteenth Amendment to the United States Constitution by failing to protect her from the danger and harm of fireworks as they do other residents (Dkt. No. 1, at 5).  The Court understands Ms. Ashley to allege a violation of the Equal Protection Clause as a result of her allegations that "[t]he City of Benton provides safety and protection from fireworks [to other citizens] in other areas of Benton." (*Id.*).  Ms. Ashley

11

may also allege a substantive Due Process Clause violation, although that is less clear based on her allegations.

Her firework claims center around the firework prohibited-use provision in Ordinance 32 of 2013 ("Ordinance") (*Id.*).  Benton, Ark., Ordinance 32 of 2013, § 3(C)(4), (June 10, 2013).  The Ordinance prohibits the use of fireworks within 300 feet of any public park; city owned property; gas station; gas, oil, or propane facility; or any area that is highly flammable.  *Id.*  The Ordinance also prevents firework detonation within 1,000 feet of a hospital and prohibits firework usage when fireworks are placed under or aimed at a vehicle.  *Id.*

Despite Ms. Ashley's contentions that she is not fairly protected by the City of Benton, she does not have a legally cognizable interest in state-sponsored protection against the actions of private third parties.  *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989).  The United States Supreme Court has held that the state does not have an affirmative duty to prevent privately inflicted harms; there is no constitutionally guaranteed right to a "minimal level[] of safety and security."  *Id.*  Because the state does not have an affirmative duty to guarantee a minimal level of safety and security, Ms. Ashley has not pled facts to show she has an actionable legally protected interest.  *Id.*

Assuming *arguendo* that Ms. Ashley has a legally cognizable interest in city protection, this Court lacks jurisdiction to hear her claims related to fireworks because Ms. Ashley has not pled facts sufficient to show that she meets all the elements of constitutional standing with respect to those claims.  *See generally Lujan*, 504 U.S. at 560–61.

The first element of standing – injury in fact – requires the plaintiff to demonstrate a "concrete and particularized" injury to a legally protected interest.  *Lujan*, 504 U.S. at 560. Emotional harm satisfies this concrete and particularized injury requirement in the Eighth Circuit.

*Spirit Lake Tribe of Indians ex rel. Comm. of Understanding and Respect v. Nat'l Collegiate Athletic Ass'n*, 715 F.3d 1089, 1092 (8th Cir. 2013).  Ms. Ashley pleads this type of emotional harm, stating that she lost sleep because firework displays, experienced heart palpitations as a result of firework explosions, and was afraid throughout the July 4 holiday season (Dkt. No. 1, at 8).  As a result, her injury can be characterized as "actual and imminent, [and] not 'conjectural' or hypothetical."  *See Lujan*, 504 U.S. at 560.  This satisfies the first element of standing.

Ms. Ashley, however, has not pled sufficient facts to make out the second element of standing – causation.  While it is true the Benton City Council passed the Ordinance allowing for the use of fireworks in city limits, to the extent Ms. Ashley attributes this harm to those who shoot fireworks, Ms. Ashley has not shown that her injury is "fairly traceable" to defendants' actions.  *Advantage Media, L.L.C.*, 456 F.3d at 801 (quoting *Republican Party of Minn*, 381 F.3d at 792).  The emotional injury alleged is "th[e] result [of] the independent action [of Ms. Ashley's neighbors,] third part[ies] not before the court" (Dkt. No. 1, at 8).  *Lujan*, 504 U.S. at 560.  All of Ms. Ashley's emotional harm, as she describes it, is the result of her neighbors using fireworks, not defendants' action or inaction (*Id.*).  The Court reaches this conclusion based on Ms. Ashley's allegation that she calls police because she cannot protect herself from "firework shooter[s]" (*Id.*).  *See generally A-G-E Corp. v. U.S. By & Through Off. of Mgmt. & Budget,* 753 F. Supp. 836, 853 (D.S.D. 1990) (explaining that standing cannot be sustained where the harm claimed is too attenuated from the challenged action).

Ms. Ashley seeks $100,000 for the harm caused throughout the July 4 holiday season and, as the Court understands her request, an affirmative injunction requiring the Chief of Police to send his officers to Ms. Ashley's home at the height of fireworks season (Dkt. No. 1, at 9–10).  The last element of standing, redressability, requires a plaintiff to show that favorable Court action

could redress the alleged harm. *Lujan*, 504 U.S. at 561. On the complaint's face, it appears that Ms. Ashley's injuries could be redressed by a favorable decision from this Court. For this reason, Ms. Ashley pleads facts to indicate that she satisfies the redressability element of standing.

Ms. Ashley does not have a legally protected interest in having the state protect her from privately inflicted harms. Moreover, she does not allege sufficient facts to show that defendants caused the privately inflicted injuries about which she complains. For these reasons, accepting as true all well-pleaded facts in Ms. Ashley's complaint and drawing all reasonable inferences from those facts in her favor, the Court determines that she lacks standing and that, as a result, this Court cannot adjudicate her claims based on fireworks. *See generally Lujan*, 504 U.S. at 560; *Warth*, 422 U.S. at 505; *A-G-E,* 753 F. Supp. at 853.

### 2.    History And Heritage Claim:  Street Name

The Court construes Ms. Ashley's second claim, that she has a Fourteenth Amendment right to history and heritage tied to her street name, to allege that defendants violated her right to Equal Protection and Due Process under the Constitution when they entertained a proposal to change Ms. Ashley's street name. (Dkt. No.1, at 9). The Court concludes that Ms. Ashley lacks standing for this claim.

Assuming *arguendo* that Ms. Ashley has a legally cognizable interest in history and heritage related to her street name, this Court lacks jurisdiction to hear her claims related to her street name because Ms. Ashley has not pled facts sufficient to show that she meets all the elements of constitutional standing with respect to those claims. *See generally Lujan*, 504 U.S. at 560–61.

First, Ms. Ashley has not suffered an "injury in fact" because no legally cognizable injury has occurred. *See generally Lujan*, 504 U.S. at 562–63. Ms. Ashley's street name has not changed,

and she has not suffered the emotional damages she alleges she will suffer if her street name is changed.

Moreover, her injury is not concrete, actual, or imminent.  *See generally Spokeo*, 578 U.S. at 339.  The Supreme Court in *Spokeo* stated that an injury must be both concrete and particularized.  *Id.* at 340.  To be concrete, the injury must "actually exist."  *Id.* at 340.  Ms. Ashley's alleged injury does not exist because the street name change has not happened; Ms. Ashley still, as of the time of the filing of her complaint, resides on a street named Dixie (*Id.*, at 1).  Further, Ms. Ashley has alleged insufficient facts to demonstrate that the street name change is imminent or that it would cause a legally cognizable injury.  The complaint simply alleges that "before 2016 . . . a group came forward with the idea to change Dixie [to] a friends [sic] name" (*Id.*, at 9).  There are no facts alleged to illustrate that the City Council took any action on the idea.  For these reasons, Ms. Ashley has failed to assert that she suffered an injury in fact.  Moreover, because Ms. Ashley has not suffered an injury in fact, she cannot make out the other two elements of standing – causation and redressability.  *See generally Lujan*, 504 U.S. at 560–61.

Ms. Ashley's complaint does not allege sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level."  *See generally Twombly*, 550 U.S. at 555.  Accepting as true all well-pleaded facts in Ms. Ashley's complaint and drawing all reasonable inferences from those facts in her favor, the Court determines that Ms. Ashley lacks standing to assert claims related to her street name, and this Court lacks subject matter jurisdiction over her claims.  *See generally Lujan*, 504 U.S. at 560–61.

### B.       Claims Under The Equal Protection Clause

Even if Ms. Ashley had standing to bring her claims, she fails to allege sufficient facts to support her claims under the Equal Protection Clause for the following reasons.

### 1.     Disparity In Protection:  Fireworks

The Court understands Ms. Ashley to allege that § 3(C)(4) of the Ordinance at issue creates firework prohibited-use zones in Benton and provides citizens in those areas with more protection from fireworks than Ms. Ashley (Dkt. No. 1, at 5).  Benton, Ark., Ordinance 32 of 2013, § 3(C)(4), (June 10, 2013).  These allegations do not indicate that members of the Benton City Council wrote the Ordinance in a way that targets a suspect class or Ms. Ashley individually.  *Id.*  The Ordinance, which legalizes firework displays in most of the City of Benton during a certain time period, does not appear to allow or disallow the use of fireworks based on race, alienage, national origin, gender, or a fundamental right.  *Id.*  Moreover, Ms. Ashley has not pled facts sufficient to show that the Ordinance in some way targets her individually.  *See generally Mensie*, 917 F.3d at 692.  Given the lack of a suspect classification or requisite targeting, the appropriate level of scrutiny is rational basis.  *See City of Cleburne, Texas*, 473 U.S. at 440–41.

Under federal rational-basis review, a court "will uphold the legislative classification so long as it bears a rational relation to some legitimate end."  *Walker v. Hartford Life & Accident Ins. Co.*, 831 F.3d 968, 976 (8th Cir. 2016).  On the face of the Ordnance, the legitimate end appears to be, among other things, to regulate the sale of fireworks, adopt safety regulations, and promote the "patriotic participation in celebrating certain holidays in the City of Benton."  Benton, Ark., Ordinance 32 of 2013, (June 10, 2013).  The classification of certain prohibited areas, on the face of the statute, appears to address areas located where the Benton City Council determined the potential for fire outweighed its desire to promote the purposes described above.  *Id.* § 3(C)(4).

Based on the pleadings, Ms. Ashley fails to plead facts sufficient to indicate that the City of Benton's classification of certain areas as firework prohibited-use zones is not rationally related to the City of Benton's apparent interest in prohibiting fires (Dkt. No. 1, at 5–8).  *See generally*

*Walker*, 831 F.3d at 976.  Ms. Ashley alleges in her complaint that defendants ignored her requests to stop city-approved use of fireworks, but she does not allege sufficient facts that would demonstrate that the Ordinance's prohibited use provision is not rationally related to the City of Benton's goals.

Given the pleadings and governing case law, accepting as true all well-pleaded facts in Ms. Ashley's complaint and drawing all reasonable inferences from those facts in her favor, the Court determines that Ms. Ashley has not pled facts sufficient to show a potential violation of the Equal Protection Clause based on fireworks.

### 2.        History And Heritage Claim:  Street Name

The Court also analyzes Ms. Ashley's history and heritage claim under the Equal Protection Clause because she did not state from which clause of the Fourteenth Amendment her purported right to history and heritage flows (Dkt. No. 1, at 9).  In her complaint, Ms. Ashley alleges that defendants violated her purported right to history and heritage under the Constitution by starting a process to rename the street where she lives (*Id.*).  However, Ms. Ashley does not plead facts sufficient to demonstrate that she is treated differently than other similarly situated citizens in the City of Benton, as is required for an Equal Protection Clause claim.  *See City of Cleburne*, 473 U.S. at 439.  In her complaint, Ms. Ashley addresses the hardship that she claims she will endure if the City of Benton changes the name of her street, but Ms. Ashley does not allege how she is being treated differently than others (*Id.*).

Additionally, Ms. Ashley has not pled facts sufficient to demonstrate a class of one discrimination claim, as she does not allege in her complaint a sufficient factual basis to demonstrate intentional discrimination (*Id.*).

For these reasons, accepting as true all well-pleaded facts in Ms. Ashley's complaint and drawing all reasonable inferences from those facts in her favor, the Court concludes that Ms. Ashley fails to allege an Equal Protection claim regarding her street name.

### 3C.     Claims Under The Due Process Clause

In the interest of justice, the Court now examines Ms. Ashley's fireworks and street name claims under the Fourteenth Amendment's Due Process Clause, focusing on alleged substantive Due Process claims.  Even if Ms. Ashley could demonstrate standing to bring these claims, these claims would fail under Federal Rule of Civil Procedure 12(b)(6).

Even if this Court were to assume for purposes of resolving this motion only that Ms. Ashley has a legally cognizable interest in city protection from fireworks and history and heritage associated with her street name, Ms. Ashley has failed to plead facts sufficient to show that defendants' actions in allegedly depriving Ms. Ashley of those purported rights were "truly irrational." *Ganley*, 491 F.3d at 749.  Government actions are "truly irrational" when those actions are "something more than . . . arbitrary, capricious, or in violation of state law." *Id.* (alteration in original) (internal quotations omitted) (quoting *Creason*, 435 F.3d at 824).  Ms. Ashley's complaint is devoid of factual allegations to demonstrate that the Ordinance's passage or enforcement is truly irrational (Dkt. No. 1).  As for changing the name of her street, Ms. Ashley admits in her complaint that the name change has not occurred; the City of Benton has not acted (Dkt. No. 1, at 9).  Moreover, Ms. Ashley failed to plead that the City of Benton's actions with respect to the consideration of changing her street name are irrational government action.

Therefore, in the light of the pleadings and governing case law, accepting as true all well-pleaded facts in Ms. Ashley's complaint and drawing all reasonable inferences from those facts in

her favor, the Court concludes that Ms. Ashley fails to state a claim for relief under the Fourteenth Amendment's Due Process Clause.

### D.   Municipal Liability Under § 1983

The Court understands Ms. Ashley's claims to arise under § 1983, based on the allegations in her complaint.  Given that she is suing defendants in their official capacities, she is only suing their municipal employer, here the City of Benton.  *Johnson*, 172 F.3d at 535.  "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Brown*, 520 U.S. at 403.  The Court understands Ms. Ashley to allege that, because the City of Benton designated certain areas as firework prohibited-use zones, the Benton City Council adopted an unconstitutional policy that leaves her unprotected by police who refuse to respond to her concerns during the July 4 holiday season (Dkt. No. 1, at 8).  Despite these contentions, Ms. Ashley does not allege facts to support this.

In her complaint, she claims to recite conversations she had with the Mayor and City Council members regarding her complaints about fireworks use during the July 4 holiday season each year (*Id.*, at 6–7).  These conversations, coupled with her naked assertions that police fail to respond to her calls, do not sufficiently allege a law, custom, or policy that purportedly requires City of Benton officials to act unconstitutionally.  *Brown*, 520 U.S. 397, 403; *Corwin*, 829 F.3d at 700; *Mettler,* 165 F.3d at 1204.  Moreover, Ms. Ashley does not allege any facts to illustrate the existence of unconstitutional misconduct by municipal officials; she does not show that a custom of unconstitutional misconduct continued as a result of deliberate indifference after notice of such unconstitutional conduct; and she has not demonstrated that an unconstitutional custom caused an infringement of her constitutional rights.  *See generally Mettler,* 165 F.3d at 1204.

Similarly, the Court understands Ms. Ashley to allege that one of the City of Benton's laws, customs, or policies deprives her of her purported right to history and heritage as to her street name (Dkt. No. 1, at 9).  This claim also fails because Ms. Ashley has not pled facts sufficient to indicate that there is a policy requiring municipal officials to act unconstitutionally.  *Id.*  Ms. Ashley's complaint alleges that the street name change *may* happen.  However, her complaint does not plead any facts to indicate that the name change would come as the result of a policy or custom requiring municipal officials to act unconstitutionally or to indicate that Arkansas Code Annotated § 14-301-101, which grants cities the power to care for and supervise streets within the jurisdiction, somehow violates her constitutional rights.

For these reasons, Ms. Ashley has failed to plead facts sufficient to show that she is the victim of an unconstitutional law, custom, or policy.

### E.    Immunities

#### 1.    Legislative Immunity

Defendants argue that, "to the extent [Ms. Ashley] sues the City Council members in their individual capacities and for their action or inaction to pass legislation relating to street names and fireworks, they are entitled to legislative immunity" (Dkt. No. 13, at 9).  Ms. Ashley has not sued any of the defendants in their individual capacities (Dkt. No. 1, at 2).  For these reasons, the Court declines to address legislative immunity.

#### 2.    Qualified Immunity

The defendants maintain that the Benton Police Chief and any defendant not granted legislative immunity should be granted qualified immunity in any claim against them in their individual capacities (Dkt. No. 13, at 11).  As discussed above, Ms. Ashley sued all defendants in their official capacities (Dkt. No. 1, at 2).  "A suit against a public employee in his or her official

20

capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535.  Ms. Ashley's claims all are the equivalent of claims against the City of Benton, and qualified immunity is not available as a defense.  *Id.*  For these reasons, the Court declines to address qualified immunity.

### F.    Motion To Add First Amendment Claim

Also before the Court is Ms. Ashley's request to amend seeking to add the First Amendment to her complaint (Dkt. No. 23).  Ms. Ashley fails to attach to her motion her proposed amended complaint as required by Local Rule 5.5(e) of the *Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas* ("A party who moves to amend a pleading shall attach a copy of the amendment to the motion").  Her proposed amendment does not address the lack of standing issues the Court identifies in this Order, and Ms. Ashley's adding the First Amendment will not cure the deficient factual allegations in her complaint identified by the Court in this Order that lead to the Court's conclusion that dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate.

For all of these reasons, the Court denies Ms. Ashley's request to amend her complaint to add the First Amendment (Dkt. No. 23).

### IV.    Conclusion

For these reasons, accepting as true all well-pleaded facts in Ms. Ashley's complaint and drawing all reasonable inferences from those facts in her favor, the Court concludes that Ms. Ashley's complaint should be dismissed.  Ms. Ashley fails to demonstrate that this Court has jurisdiction to hear her claims due to her lack of standing; she fails to plead facts sufficient to show that defendants violated her Equal Protection and Due Process rights under the Fourteenth Amendment; and she does not allege facts sufficient to show that defendants engaged in unconstitutional behavior.

Therefore, the Court grants, in part, and denies, in part, defendants' motion to dismiss (Dkt. No. 12). The Court grants the motion to the extent the Court dismisses without prejudice Ms. Ashley's complaint (Dkt. No. 1; 12). However, the Court denies the motion to the extent defendants request the Court dismiss Ms. Ashley's complaint with prejudice; the Court declines to dismiss with prejudice (Dkt. No. 1; 13, at 1).

The Court also denies Ms. Ashley's request to amend her complaint (Dkt. No. 23) and denies as moot Ms. Ashley's motion for order (Dkt. No. 17), her request related to trial testimony (Dkt. No. 24), her request related to the discovery dispute with defendants (Dkt. No. 26), and defendants' motion to compel, or in the alternative, motion to extend time (Dkt. No. 27).

It is so ordered this the 12th day of September, 2022.

Kristine G. Baker
United States District Judge